IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNA KELLER,** | : | Civil No. 1:17-cv-1883 |
| **Plaintiff,** | : | |
| v. | : | |
| **PFIZER, INC.,** | : | |
| **Defendant.** | : | Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

Plaintiff Jenna Keller brings the instant action against her former employer, Pfizer Inc., under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. Asserting that Plaintiff's claims are covered by a mutually binding arbitration agreement, Pfizer has filed a motion to compel arbitration.

## **I.     Background**

According to the complaint,[1] Jenna Keller was hired by Pfizer as an assembly worker on June 6, 2016. (Doc. 1 ¶ 8.) Plaintiff alleges that, while working for Pfizer, she was sexually harassed by another employee, known as "Willie," who stared at her while she worked, made lewd gestures toward her with his mouth and hands, and offered to take her "behind the dumpsters" or "to the chocolate factory." (*Id.* ¶¶ 9-10.) After several weeks of this harassment, Keller alerted her supervisor, Craig Woodal ("Woodal"), to Willie's behavior. (*Id.* ¶ 13.) According to Keller, Woodal responded that there was "nothing he could do about

---

[1] The facts are derived from Plaintiff's complaint and taken as true for present purposes.

it," but that he would refer the matter to Pfizer's corporate office. (*Id.* ¶ 14.) Around this same time period, Willie began to follow Plaintiff outside of the workplace, appearing at her home, at stores, and at a laundromat. (*Id.* ¶ 15.) This behavior exacerbated Plaintiff's preexisting anxiety disorder, which had been under control prior to these events. (*Id.* ¶ 16.) Plaintiff continued to report the behavior to Woodall and a plant manager, but no action was taken in response to her complaints. (*Id.* ¶ 17.)

On October 12, 2016, Plaintiff's supervisors called her to a meeting regarding an upcoming suspension of her fiancé, a fellow employee. (*Id.* ¶ 18.) Keller told the group that she felt safer at work with her fiancé present and asked whether they would take any action in response to Willie's behavior during her fiancé's suspension. She suggested that they move her and Willie to different shifts, but her request was denied. (*Id.* ¶ 19.) Keller then left the meeting to go on her scheduled break. (*Id.* ¶ 20.) As she was exiting the building, a security guard confiscated her work badge and escorted her off the property. (*Id.*) Presuming that she had been fired, Keller emailed Woodal for an explanation. (*Id.*) He replied that she maintained her employment but had been suspended for attendance-related issues. (*Id.* ¶ 21.) However, on October 27, 2016, Keller received a letter terminating her employment with no reason cited for her termination. (*Id.* ¶ 23.)

In a complaint filed on October 16, 2017, Plaintiff alleges that she was subjected to a hostile work environment as well as continuous, frequent, and pervasive sexual harassment and that she was fired in retaliation for reporting the harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). (*Id.* ¶¶ 24, 27.) In response to the complaint, on December 18, 2017, Pfizer filed a motion to compel arbitration and dismiss or stay Plaintiff's complaint, claiming that the two parties entered into a mutually binding arbitration agreement. (Doc. 9.) Specifically, Pfizer claims that the parties agreed that all claims arising from or relating to Plaintiff's employment relationship with Pfizer would be resolved through binding arbitration, pursuant to Pfizer's Mutual Arbitration and Class Waiver Agreement (the "Arbitration Agreement"), which Plaintiff entered into after attending an online training module. In support of its motion, Pfizer attaches, *inter alia*, the Arbitration Agreement together with an email notification verifying that Plaintiff had completed a "Mutual Arbitration and Class Waiver Agreement Acknowledgement" on June 26, 2016, at 8:10:09 a.m. (Doc. 12-1.) In response to the motion to compel, Plaintiff argues that, while she was aware that Pfizer implemented an arbitration policy, she did not sign or have any intent of being bound to arbitrate claims arising from sexual harassment or retaliation. (Doc. 14.)

## II. **Discussion**

The court may review a motion to compel arbitration under either a Rule 12(b)(6) standard or a Rule 56 standard. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). When it is apparent on the face of the complaint or documents relied upon in the complaint that certain claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under the Rule 12(b)(6) standard without the inherent delay of discovery. *Id*. at 774. If, however, the complaint is unclear regarding the arbitration agreement or the opposing party has responded to the motion to compel arbitration with facts sufficient to place the arbitration agreement in question, "the parties must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement before the court entertains further briefing on the issue." *Id*. at 774-76. After limited discovery, the court may consider a renewed motion to compel arbitration, this time under a Rule 56 standard. *Id.* at 776.

In the present case, the complaint sets forth allegations regarding Plaintiff's hostile work environment and retaliation claims, but is silent concerning an agreement to arbitrate. Despite the evidence of such an agreement presented by Pfizer, the court is compelled by *Guidotti* to provide Plaintiff the opportunity to conduct limited discovery on the narrow issue concerning the validity of the

4

arbitration agreement. *See Wolkenstein v. Citibank*, No. 3:17-cv-1295, 2018 WL 2230686, *2 (M.D. Pa. May 16, 2018) (explaining that ordinarily discovery must be permitted if it is not apparent from the face of the complaint that the plaintiff's claims implicate an arbitration agreement); *Banks v. Barclays Bank Credit Serv.*, No. 1:17-cv-96, 2017 WL 4764543, *1 (M.D. Pa. Oct. 20, 2017) (stating that *Guidotti* "holds unequivocally that if a complaint and its incorporated documents are not clear as to whether the parties agreed to arbitrate, 'the non-movant' must be given the opportunity to conduct limited discovery"); *Potts v. Credit One Fin.*, No. 3:15-cv-1119, 2016 WL 225678, *5 (M.D. Pa. Jan. 19, 2016) (finding that "because arbitrability is not apparent on the face of the complaint, the [ ] motion to compel arbitration must be denied pending further development of the factual record"). As such, the court will grant the parties thirty days to conduct limited discovery on the issue of whether Plaintiff entered into and intended to be bound by the Arbitration Agreement. At the close of that thirty days, or before discovery is complete, Defendant may file a renewed motion to compel arbitration, which will be reviewed by this court under a motion for summary judgment standard. All other discovery will be stayed for that period of time, and until such time as the court decides the issue of arbitrability.

## III. Conclusion

For the foregoing reasons, Defendant's motion to compel arbitration will be denied without prejudice to the filing of a renewed motion to compel arbitration following a brief period of time in which the parties may conduct limited discovery on the issue of arbitrability.

An appropriate order will follow.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 8, 2018