IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNA KELLER,** | : | **Civil No. 1:17-CV-1883** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **PFIZER, INC,** | : | |
| Defendant. | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Presently before the court is Defendant Pfizer, Inc.'s ("Defendant") renewed motion to compel arbitration and dismiss the complaint filed by Jenna Keller ("Plaintiff"). The parties having conducted discovery on the limited issue of whether a valid arbitration agreement exists, the court will order the parties to proceed to arbitration and will stay the instant matter pending the outcome of said arbitration.

## **I.**  **Background**

The factual background relevant to the disposition of Defendant's renewed motion to compel arbitration was set forth in full in this court's previous memorandum dated August 8, 2018. (Doc. 18.) In brief, Plaintiff was previously employed by Defendant as an assembly line worker and, on October 16, 2017, filed the instant complaint alleging that she was subjected to a hostile work environment as well as continuous, frequent, and pervasive sexual harassment by a

coworker and that she was fired in retaliation for reporting the harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). In response to Plaintiff's complaint, Defendant filed a motion to compel arbitration, alleging that Plaintiff had entered into an arbitration agreement as a prerequisite to her employment and that the agreement covered the claims alleged. (Doc. 9.) Because Plaintiff's complaint did not reference or attach the relevant agreement and Plaintiff affirmatively denied assenting thereto, this court ordered discovery limited to the issue of whether Plaintiff entered into a valid arbitration agreement. (Doc. 19.) After conducting discovery, Defendant filed the instant motion along with Plaintiff's deposition transcript and affidavits from Robert M. Baker ("Baker") and Edward Gramling ("Gramling"). (Doc. 24.) Plaintiff's new hire packet, and screenshots of the updated online arbitration agreement were attached as deposition exhibits to Plaintiff's deposition transcript. (Doc. 24-5.) At all relevant times, Baker was employed by Defendant as the Senior Director of Enterprise Training Strategy and in his capacity as Senior Director, administrated the online arbitration agreement training program that Plaintiff completed in the course of her employment. (Doc. 24-2.) Gramling is employed by Defendant as Assistant General Counsel and attested that Defendant maintains full and complete records of all employee emails sent after 2007. (Doc. 24-3.) Furthermore, Gramling

2

attested that emails containing the relevant arbitration agreement and confirmation of Plaintiff's completion of the online arbitration training module were received at Plaintiff's work email address. (*Id.*)

## II. Legal Standard

When deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). Pursuant to the Federal Arbitration Act ("FAA"), "[a] written provision" in a commercial contract evidencing an intention to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has construed the FAA as establishing a nationwide policy favoring the resolution of disputes via arbitration that requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Arbitration agreements may only be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In disposing of a motion to compel arbitration, the court applies a motion to dismiss standard where (1) the existence of an arbitration agreement is apparent from the face of the complaint; (2) the contract containing the pertinent arbitration agreement is attached to the complaint; or (3) the plaintiff does not contest that an enforceable arbitration agreement exists. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013) (citation omitted). If the existence of an arbitration agreement is not apparent, the court must order discovery limited to the issue of arbitrability and, in disposing of the motion to compel, must apply "the same standard it applies to a motion for summary judgment." *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009). The court applies the summary judgment standard because a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3rd Cir. 2009). Under this standard, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Kaneff*, 587 F.3d at 620. "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Vilches v. Travelers Cos.*, 413 F. App'x 487, 491 (3d Cir. 2011) (internal quotation marks and citation omitted).

## III. Discussion

The enforceability of arbitration clauses and their scope have been among the most frequently-litigated issues before the Supreme Court in recent years, particularly in the context of employment disputes. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 138 S. Ct. 2678 (2018) (granting certiorari); *Lamps Plus, Inc. v. Varela*, 138 S. Ct. 1697 (2018) (same). It is now well-settled that one of the fundamental requirements of the FAA is that the interpretation of arbitration clauses must be placed on equal footing with other issues of contractual interpretation under applicable state law. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). Accordingly, the court must look to the applicable state law to determine if a valid agreement to arbitrate exists, unless that state law disfavors arbitration. If so, that law must give way to the FAA's nationwide policy favoring resolution of disputes via arbitration. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426, (2017) ("The FAA thus preempts any state rule discriminating on its face against arbitration."). To determine whether a contract exists under Pennsylvania law, the court must "look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998).

Plaintiff does not argue that there was inadequate consideration in the form of her offer of employment[1] or that the terms of the agreement were indefinite.[2] Instead, the issue before the court is whether Plaintiff manifested an intent to be bound by the arbitration clause.

Defendant argues that there are no genuine issues of material fact that Plaintiff was appraised of Defendant's arbitration agreement. There are two instances at issue where Plaintiff purportedly agreed to arbitration: (1) at the time

---

[1] The court notes that offers of employment and mutual obligations to arbitrate are generally adequate consideration for agreements to arbitrate. *See Jayasundera v. Macy's Logistics & Operations*, No. 14-cv-7455, 2015 WL 4623508, *4 (D.N.J. Aug. 3, 2015) ("Sufficient consideration for the arbitration agreement also exists, as the agreement mutually obliges Macy's and Plaintiff to arbitrate all employment disputes and Plaintiff has continued his employment with Macy's.").

[2] Plaintiff mentions, but does not develop, her argument that the agreement is not "specific enough" to include statutory claims. (Doc. 25-1, p. 10.) In support of this argument, she cites *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) ("This Court has required only that an agreement to arbitrate statutory antidiscrimination claims be explicitly stated" (citation omitted)) and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974) (holding that an employee was not prohibited from asserting a Title VII claim in federal court where the arbitrator declined to rule on that claim in union grievance proceedings). Perplexingly, the Court in *Pyett* found that the agreement in that case did sufficiently set forth its applicability to statutory claims simply by referring to the statutes in question. Furthermore, the agreement in *Alexander* was much more narrow and unspecific than the arbitration agreement in this case: the agreement in *Alexander* applied only to "differences aris[ing] between the Company and the Union as to the meaning and application of the provisions of this [collective bargaining] Agreement, . . . [and] any trouble aris[ing] in the plant." *Id.* at 60. Moreover, in *Alexander*, the arbitrator had already implicitly interpreted the agreement to exclude Title VII claims. Here, not only does the agreement include "all disputes, claims, complaints, or controversies . . . against [Defendant]," it expressly includes discrimination and/or harassment claims, retaliation claims, . . . including but not limited to claims under . . . 'Title VII.'" (Doc. 24-5, p. 72.)

At a minimum, this argument is disingenuous as Plaintiff's counsel conceded during her deposition that the claims raised in the complaint would be covered by the agreement if this court found it to be enforceable (Doc. 24-5, p. 30 (Attorney Baird: "I can stop this and just say, yes, we would agree that her claims would be covered within this particular provision."),) and, as described above, the agreement in the instant case is obviously distinguishable from the agreement in *Alexander* and expressly and unequivocally includes the claims alleged by Plaintiff.

6

she was hired; and (2) by completing the mandatory arbitration training module and acknowledging the arbitration agreement contained therein. Defendant submits the following evidence in support of its argument:

1. Defendant's business records demonstrate that, prior to the start date of employment on June 6, 2016, Plaintiff was sent a new hire packet which included information regarding Defendant's arbitration policy. (Doc 24-5, pp. 48-49; Doc. 24-3, ¶¶ 5-8.)

2. On June 18, 2016, Plaintiff was sent an email notification advising her about a mandatory online training module about Defendant's mandatory arbitration agreement. (Doc. 24-5, pp. 48-49; Doc. 24-2, ¶¶ 4, 10-11; Doc. 24-3, ¶¶ 5-8.)

3. On June 26, 2016, Plaintiff completed the training module, which consisted of several online slides that required Plaintiff to click through after reading each one. (Doc. 24-2, ¶¶ 5-10; Doc. 24-3, ¶¶ 9-10.)

4. The training module advised Plaintiff that if she continued to work for Defendant for at least 60 days after completion of the training module, her continuing employment would constitute consent to the arbitration agreement. (Doc. 1, ¶ 18, 23; Doc. 24-2, ¶ 10; Doc. 24-5, pp. 50-51.)

5. Plaintiff continued her employment with Defendant for more than 60 days and did not object to the arbitration agreement. (Doc. 24-5, pp. 50-51.)

Plaintiff argues that she should not be bound by the arbitration agreement because: (1) she does not recall entering into the agreement; (2) she had no knowledge of arbitration, either conceptually or that Defendant required it as a condition of employment, prior to the time Defendant filed its motion to compel; and (3) she did not physically sign the arbitration agreement. (Doc. 25-1, pp. 6-7 (citing Doc. 25-4, pp. 62-64).)

Plaintiff's argument that she should not be bound by the arbitration agreement simply because she did not sign a physical paper contract is as archaic today as the notion that James Joyce is unlawfully obscene.[3] *See generally* 15 U.S.C. § 7001 *et seq.* (Effective October 1, 2000) ("Electronic Signatures in Global and National Commerce Act" or the "E-Sign Act"); 73 P.S. § 2260.101 *et seq.* (Effective January 18, 2000) ("Pennsylvania's Electronic Transactions Act" or "PAETA"); *Levy–Tatum v. Navient & Sallie Mae Bank*, No. 15-3794, 2016 WL 75231, *5-6 (E.D. Pa. Jan. 7, 2016) ("The E-Sign Act simply establishes that contracts and signatures cannot be denied legal effect merely because they are in electronic form."). In the specific context of assent to arbitration clauses, courts

---

[3] *United States v. One Book Entitled Ulysses by James Joyce*, 72 F.2d 705, 708 (2d Cir. 1934).

have found such intent where a plaintiff agreed in a digital format that did not require a signature, electronic or otherwise. *See Jaludi v. Citigroup*, No. 15-cv-2076, 2016 WL 4528352, *4 (M.D. Pa. Aug. 30, 2016) ("The plaintiff acknowledged the provisions of those Agreements electronically. As found by the magistrate judge, the plaintiff's continued employment would constitute the necessary consideration for the arbitration agreements. With all of these factors present, the court finds that the arbitration agreements are both valid and enforceable."); *Schmell v. Morgan Stanley & Co.*, Inc., No. 17-cv-13080, 2018 WL 4961469, *1 (D.N.J. Oct. 15, 2018) (granting motion to compel arbitration where "Defendant sent emails to all employees informing them 'that the program was mandatory unless they opted out and that their continued employment without opting out constituted acceptance of [the Agreement];' [and] the Agreement was available on Defendant's internal human resources portal."); *see also Evans v. Gordon Food Servs.*, No. 14-cv-1242, 2015 WL 4566817, *9 (M.D. Pa. July 29, 2015) ("the Court finds by clicking "I Agree," Plaintiff acknowledged her acceptance of the contractual limitations provision."). Moreover, courts have unwaveringly held that continued job performance is a valid method of accepting an agreement to arbitrate in lieu of a signature.

Interpreting Pennsylvania contract law, courts in this circuit have routinely held that a contract entered into as a condition of employment is valid and

enforceable against the employee. *Smaller v. JRK Residential Mgmt. Corp.*, No. 16-cv-2066, 2017 WL 616742, *3 (E.D. Pa. Feb. 15, 2017) (collecting cases); *Wilson v. Darden Rests., Inc.*, No. 99-cv-5020, 2000 WL 150872, *11 (E.D. Pa. Feb. 11, 2000) (holding that continued employment after receipt of an arbitration policy "is sufficient to constitute both acceptance of the Company's offer [of continued employment] as well as consideration for an enforceable arbitration agreement."); *Lepera v. ITT Corp.*, No. 97-cv-1461, 1997 WL 535165, *4 (E.D. Pa. Aug. 11, 1997) (holding that the plaintiff had "accepted [his employer's] offer of continued employment with [an] arbitration provision in his contract when he continued working after he received the Policy."). Moreover, an employee may accept changes in the terms of an employment contract by virtue of continuing to perform her job functions. *Alexander v. Raymours Furniture Co.*, No. 13-cv-5387, 2014 WL 3952944, *5 (E.D. Pa. Aug. 13, 2014) (collecting cases); *see also Bauer v. Pottsville Area Emergency Med. Servs., Inc.*, 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000) ("Provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties." (internal quotation marks omitted)); *but see Scott v. Educ. Mgmt. Corp.*, 662 F. App'x 126, 130-31 (3d Cir. 2016) (holding that employees did not agree to arbitrate despite their continued performance because they expressly objected to the inclusion of an arbitration clause in writing). Having established

that Plaintiff may lawfully agree to an arbitration agreement contained in an employee hiring packet or training module, particularly by continued employment rather than a physical signature, the court is left to resolve the remaining factual dispute raised by Plaintiff: whether Defendant provided sufficient notice of the agreement to Plaintiff.

Plaintiff does not deny that she received the relevant agreements or did not agree to them; instead, she merely states that she is not familiar with them and cannot recall their specific contents. (Doc. 25-4, pp. 15-20.) If Plaintiff's logic were sufficient to defeat evidence of a contractual agreement, any party could escape enforcement simply by stating that they forgot the terms of a contract or could not recall signing the document. Defendant has offered tangible evidence that shows that Plaintiff received, read, and affirmatively agreed to the company's standard arbitration agreement, (*see* Docs. 25-2, 25-3, 25-5,) and Plaintiff has offered no evidence that would invalidate or contradict Defendant's evidence. *See Black v. JP Morgan Chase & Co.*, No. 10-cv-848, 2011 WL 3940236, *5 (W.D. Pa. Aug. 25, 2011) (finding that the plaintiff's averment that she didn't recall reading the arbitration agreement was insufficient to rebut the defendant's evidence that she received it and failed to opt out), report and recommendation adopted, No. 2:10-cv-48, 2011 WL 4089411 (W.D. Pa. Sept. 14, 2011) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002) (holding that

the plaintiff's averment in her affidavit that she did not recall seeing or reviewing the arbitration program brochure that was allegedly included with her payroll check did not raise a genuine issue of fact as to whether the brochure was distributed to her, where the record also contained uncontroverted affidavits from the defendant indicating that the brochure was definitely sent and presumably received with her paycheck) (citations omitted); *Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 895 (M.D. Tenn. 2003) ("That [the plaintiff] 'does not recall' receiving a copy of [the arbitration agreement] does not invalidate the agreement.")). The most reasonable inference that the court can draw from the evidence presented is that Plaintiff simply did not read the agreement with sufficient attention to recall its contents, if she did so at all. Although Plaintiff argues that "it speaks for itself that [Defendant] does not sit with its employees to explain the arbitration agreement in detail," (Doc 25-1, p. 6,) the agreement is far from incomprehensible, and Plaintiff testified that she did not ask for any clarifications as to its meaning. Defendant did much more, however, than merely instruct Plaintiff to read the agreement; it provided an online tutorial explaining the arbitral process and maintained a "frequently asked questions" website that offered further information on Defendant's arbitration policies. The court rejects Plaintiff's assertion that the divide is so great between having a human resources director verbally instruct an employee and requiring that employee to complete a

self-guided instructional program that an omission of the former completely invalidates a contractual agreement. Accordingly, Plaintiff's argument that she should not be bound to the agreement simply because she does not recall its contents is unavailing.

## IV. Conclusion

For the foregoing reasons, the court concludes that Plaintiff and Defendant entered into a valid and enforceable agreement to arbitrate and that the claims asserted in Plaintiff's complaint are arbitrable under the terms of that agreement. Accordingly, Defendant's motion to compel arbitration will be granted and the matter will be stayed pending completion of the arbitration.[4]

                                          s/Sylvia H. Rambo
                                          SYLVIA H. RAMBO
                                          United States District Judge

Dated: November 8, 2018

---

[4] Although Defendant does not expressly request a stay, Plaintiff did seek a stay in the alternative in its response to Defendant's motion to compel. (Doc. 25-1, p. 10.) Accordingly, the court must honor Plaintiff's request for a stay. *FFR SE, LLC v. Sanborn*, No. 14-cv-5439, 2015 WL 3970923, *12 (E.D. Pa. June 30, 2015) ("Section 3 of the FAA eliminates this Court's discretion to dismiss a case when one of the parties applies for a stay litigation pending arbitration. While [the defendant] seeks complete dismissal, [the plaintiff] requests the litigation be stayed pending arbitration.") (citing 9 U.S.C. § 3; *Lloyd v. Hovensa LLC*, 369 F.3d 263, 269 (3d Cir. 2004)).